24-3185 KetoNatural Pet Foods v. Hill's Pet Nutrition. Mr. Burt. May it please the court, Your Honor, Thomas Burt for Plaintiff Appellant KetoNatural. This case concerns an extensive campaign of commercial disinformation. The claim is under the Lanham Act. In this case, the district court below made two determinations on a pleading motion, which this court reviews de novo, and both of those determinations were error because the court applied an incorrect standard. Those determinations were that the statements at issue were not commercial speech and that there were no false statements alleged. If the court affirms, Your Honor, it will have both public policy and also jurisprudential consequences. The public consequence is that an affirmance here would create a fairly broad immunity for a marketing executive or department to decide that their best tool was a campaign to say that their competitors' products were dangerous, even if there was no reason or basis to say that, and that they could escape liability for it if they were careful to make sure that by saying that they avoided fora that looked like traditional ad campaigns, Your Honor. Is it your understanding that the district court rejected the establishment claim doctrine? Yes, Your Honor. The district court told us at page 27 of its opinion that what we had to do was prove that the dog food did not cause the disease, the disease dilated cardiomyopathy. That's wrong in two respects, one of them much more important than the other. It's wrong in that the district court got its language crossed up between causation and correlation, but that's not actually the important way in which that determination was wrong. The important way in which that determination was wrong is the court did not recognize that the statements were of the kind where what we have to show is that the research does not support the thing that the speaker said the research supported. And Your Honor, I think this is easier to understand if I focus the court's attention, which frankly I don't think I did as good a job as I needed to at the district court level, on a few statements. So I'm just going to point the court to three. Let me interrupt before you do. This circuit has not yet adopted the establishment claim doctrine, is that correct? Not squarely, Your Honor. There are eight circuits that have looked at it and all of them have said, yes, that's the law here. Some of them have found on those particular facts that the statements didn't qualify, but they have all looked at that doctrine and said, yes, that's the law. If this court were to decline to do so, it would create a split in the circuit, which was the point I was moving to. If we did decline to do so, would that undermine your criticism of the district court? In other words, would you then say, well, maybe the district court was right if you're going to go ahead and reject that doctrine, which you shouldn't? Not quite, Your Honor. But that's really a significant component of our falsity argument. I would say, as we did in our briefing, that since correlation is just math, studies that show an absence of correlation show no correlation, not merely that they have not shown correlation, if I've phrased that properly. So I think that the scientific literature has not found correlation means that it has found not correlation, which would be different from causation, right? Correlation in that way is simply math, so that the statements about linked, associated, correlated would still be false. But I acknowledge the importance of establishing the claim doctrine, what we're going to say. I wanted to have the court look at the statements at 203 of the complaint. We have established the link between diets like these. I'm omitting a few words. If you are feeding the dog one of these diets, talk to your veterinarian about switching. At 207 of the complaint, by now most veterinary professionals understand there's a link between BEG diets and atypical dog breeds developing DCM, and the one at 154D of the complaint. Research has shown that these diets are commonly grain-free commercial drive diets. Most dogs with dilated cardiomyopathy have been eating non-traditional diets for over a year. And I omitted a couple of words from that one. So the establishment claim theory is a theory to prove actual falsity, right? Yes, your honor. Okay, I'm not sure that you've preserved a claim for true but misleading, if we're focused on falsity right now. You want to disabuse me of that? Well, two things about that. First, that if the court decides that we are in the land of true but misleading, which is sort of only different in gradation from false by necessary implication, the only real difference for our purposes between those two doctrines is that the latter requires that we show the impact on the actual consumers. And the complaint pleads that my client did an actual survey to show that. Under those circumstances, the court has reserved to itself the right to still review it because we made closely analogous arguments under a plain error standard. And if it's just applying the wrong standard to what we have to plead about the statements, I think the court should take the opportunity to do that, whether or not it's preserved the way it should have been. Okay, thank you. So, your honor, I want to also point the court to the three nevers of the research. And we are not picking a fight here with the peer-reviewed research, which makes this different from, for example, ONY and its progeny. There has never been a case that shows a correlation between a study, that shows a correlation between BEG or a group of them, dog foods, and developing DCM, or a correlation between dogs eating BEG or grain-free foods and living shorter lives. And there's never been a case that shows that a dog that already has dilated cardiomyopathy will improve its condition from dietary change alone. So, this is a little like ALPO when then-judge Thomas said, you can't say that your dog food will treat hip dysplasia if there is no empirical basis to say that. We are in the land of statements that assert, or by necessary implication, tell the listener, science backs me up on this. The research has shown studies prove. Do any of the academic articles reference any particular pet food? I cannot point to one that references a particular brand. So, your honor, I wanted to address that in light of the commercial speech prong, if I may. And that's where I'm focused. My friend at the other podium spent a lot of effort in the briefing on the second prong, saying, well, there's no direct attack on ketonatural-specific product. And of course, this is a class case where the class of dog food makers includes everybody swept within the defendant-created category BEG. The cases do not indicate that the brand is how one assesses the second prong of the Bolger standard. In fact, P&G in the Fifth Circuit does, I'm sorry, I was going to, P&G in the Fifth Circuit has brand name but no category of products, whereas Bolger itself has category but not brand name. Does it matter who the speaker is? If you don't have a specific reference to a product, you might still have a claim, but I think the cases would suggest that that depends on who the speaker is. Would you agree? It absolutely depends on who the speaker is, your honor. And by that, I don't mean whether it's Hills or one of its co-conspirators. The court rightly said, though I think it backed off it when it addressed the statements, that it was assuming without deciding vicarious liability, but who the speaker is in terms of whether the speaker is a direct competitor is tremendously compelling. If there's one factor, and Bolger does say that no one factor controls, if there is one factor against which all of this is read, the question is, is the speaker or the conspirator putting out the statements a direct competitor of the people they're speaking against? What we have here, your honor, the complaint pleads that Hills identified a group of foods that was taking its market share and decided we have to say something really bad about all of those products to claw back that market share. Direct competitors, the touchstone in the case law of commercial speech, that factor alone is not enough, but they are read holistically as Bolger itself and P&G in the Fifth Circuit tell us. Is there any evidence that the academics were compensated depending on the results of their articles, the conclusions of their articles? No, and again, your honor, we are not picking a fight with the peer-reviewed science. We are not saying that they used bad data or applied torque to the conclusions they reached. In fact, Oney tells us that the peer-reviewed science and the results, but only that, right, are protected. What we are saying is, if you actually look at what the studies say and not how they are described in retransmission or in re-reference or when they're referred to by Hills' own veterinary education, the actual results of the study never show that there's a correlation between these foods and this disease. The peer-reviewed science backs my client up. So I guess what my focus is, I see a big difference between the veterinary blogs and public media quotes and Hill's own website and Hill's educational programs, because to me, if you look at these cases, it is critical who's speaking. Well, your honor, I think that reads the conspiracy allegations out of existence. I think none of those cases address circumstance where there's an actual pleading conspiracy, and here there is. The district court did not decide whether the conspiracy was properly pleaded. What we have here, every statement is made by an alleged conspirator, and if the district court wanted to decide that that pleading didn't hold, it needed to do that below. Since it said it was going to assume without deciding that Hills is vicariously liable for every statement made by a co-conspirator, that's not an issue the court should address on that appeal, on this appeal. If the court doesn't have further questions, I would like to reserve the balance.  Mr. Panikowsky. Thank you, your honor. Good morning, your honors, and may it please the court. Stanley Panikowsky for the appellee, Hill's Pet Nutrition. The district court's judgment should be affirmed, your honors, for at least one of two independent reasons. First, Keto Natural did not plausibly allege commercial advertising or promotion. Second, Keto Natural did not plausibly allege false or misleading representations of fact under any doctrine. Both of these are essential elements of a Lanham Act false advertising claim, so the absence of either one supports the district court's correct decision to dismiss the false advertising claim with prejudice. Let me start with falsity. Yes, your honor. If we were to adopt the establishment claim doctrine, would they be able to make out falsity here? No, your honor. Keto Natural would not be able to plausibly allege falsity, even if this court recognizes the establishment claim doctrine, and that is because most... Why not? I mean, it seems to me that they are representing a conclusion from the studies that the studies, and certainly the FDA investigation, does not support. Your honor, the establishment claim doctrine, as articulated by the Eighth Circuit in the types of statements, are statements about the quality or characteristics of a product, beginning with a phrase like test proves, study show, or some other phrase that means the same thing. And here, your honor, we don't have any alleged statements that fit that bill. Most of the statements do not even have anything such as research shows. Pause there, because some statements were identified earlier in the argument, and on page 38, 39, those show up, or at least some of them. Research has now shown the FDA has identified learning correlation. Many have linked diet associated DCM, blah, blah. In other words, I don't know that you can say what you just said. Your honor, taking that first example, the research has now shown, first, it does matter who the speaker is, and this is not a statement that was made by Hills itself. But setting that aside, your honor, what this statement is talking about is research has now shown some general proposition about the state of the science here. It's not like the other establishment plain cases that Keto Natural cites, where there's some direct comparison between two specific products, or a statement being made about a particular product. But there is, because it's the research that has shown if you feed your dog these, the natural products, that you're going to give them a heart disease. I mean, the research doesn't support that, does it? Your honor, when you look at this statement, when you end the allegations of the complaint, there were the case reports that were made to the FDA. There were 515 cases that were reported. The FDA itself said that over 90% of those reports were for grain-free diets, and you had the FDA itself launching the investigation, holding scientific symposia, reporting updates. So the statement, research has now shown that these diets are commonly grain-free commercial dry diets that contain pulses, and to a lesser extent, potatoes or sweet potatoes, is simply a characterization of the case reports. But the allegations here are that based on this conspiracy, they intentionally only referred cases to the FDA that were dogs who were eating their competitors' food. I mean, you know, I think like Judge Phillips, that if we recognize an establishment claim doctrine, there's enough here to get over the hump. Your honor, with respect to the issue of conspiracy, that's again where it's very important to analyze who is speaking here. Are you arguing, before you answer, that we should not adopt the establishment doctrine? No, your honor. Hills is not taking that position because Hills believes that Keto Natural has not plausibly alleged literally false establishment claims anyway for the multiple reasons we stated in our brief, some of which we've discussed so far, that this court can assume for the sake of argument that that doctrine is being adopted. If the court were to decide to adopt the doctrine, I think what is important here is to limit it in the way that the Eighth Circuit did in Rhone-Poulenc, because Keto Natural's argument would essentially use the exception to swallow the rule and would convert every statement about the state of the science, about the characteristics of a product, about a comparison between two products to an establishment. Does their civil conspiracy theory, does that solve their who the speaker is problem or not? No, your honor. Their civil conspiracy claim does not solve who the speaker is problem for three reasons. First, when you're looking at the first reason why their claims fail, commercial speech, you don't have any issue there in terms of it mattering whether a certain defendant is vicariously liable for the statements of others, because when you're looking at whether the statements constitute commercial speech, you're looking at factors like is it an advertisement? Does it refer to a specific product? Is there an economic motivation? Vicarious liability does not come into play here. Second, your honor, there is a circularity in Keto Natural's vicarious liability argument. For civil conspiracy under Kansas state law, cases like Mays and Stolt, you need to plausibly allege and ultimately prove at least one overt unlawful act in furtherance of the conspiracy. Here, the only predicate act that Keto Natural has identified are Lanham Act false advertising violations. And then Keto Natural has said in its briefing on appeal that it is relying on civil conspiracy alone to show vicarious liability. Therefore, you have a circularity there where you cannot use the Lanham Act violation as a predicate act for civil conspiracy and vicarious liability until you've actually shown a Lanham Act violation. And therefore, Keto Natural is limited to show that predicate act to the statements by Hills itself. And your honors, when we look at the complaint, we find very few statements that are alleged to be made by Hills itself. And if we look at the two that the complaint highlights, we have at pages 441 to 444 of the appendix, an article on the Hills website, cardiomyopathy in dogs, what you need to know. And Keto Natural does not allege that Hills made any false or misleading statements in that article under the establishment claim doctrine or otherwise. Rather, there's a sentence in that article which talks about a number of not just nutrition related to DCM. And it says referring to DCM, the disease is at least partly genetic and nutrition may also play a part according to the University of Illinois College of Veterinary Medicine. And on the academic institution's name, there's a hyperlink then to a University of Illinois article discussing this issue. Your honors, if this were- in dog food and cardiomyopathy, it actually has a section at the bottom of the page where it advertises specific Hills products. Yes, your honor. There is a portion at the bottom of that page where it says related products and has links to those products. However, your honor- That seems like an advertisement to me. Your honor, if those links were looked at in isolation, one would say that you've plausibly alleged that those are links to advertisements. But the focus of the commercial speech inquiry under Bolger and under cases like the 11th Circus decision in Tobinick is on the content of the challenge speech itself. So when you look at the statement, for example, that's made at page 469 of the Hills article you referenced, some of these trends may even pose health risks to dogs. And that then has the hyperlink to the Tufts University article. In that situation, your honor, you're simply making a statement that is identifying a general issue of scientific concern. And then you're linking to an academic article discussing that. If the commercial speech doctrine were to be construed so broadly that the mere fact that later on in that page, you have related products, hyperlinks, then you would simply be converting any way in which a for-profit entity communicates with the public, including a potential customer base into commercial speech, simply because there are links on their website. And the 11th Circuit in Tobinick makes clear that that's not enough. In Tobinick, the defendant's blog post on a blog of which the defendant was the executive editor did contain advertisements themselves and did contain links to other revenue-generating sites. And the 11th Circuit made clear that those features by itself did not convert the commercial speech being challenged into an advertisement. And if so, you would have the problem where the non-core speech that Bolger identifies as being subject to its three-factor test would always be drawn into the realm of commercial speech. How would you distinguish Bolger then? Your honor, we would distinguish Bolger on several grounds. First, taking the first Bolger factor, advertisements. In Bolger, the Supreme Court expressly stated that the informational pamphlets were conceded to be advertisements. There's no such concession here. And even when you compare the facts of this case with the informational pamphlets in Bolger apart from that concession, in Bolger, the defendant was proposing to send these informational pamphlets unsolicited directly to consumers. They were classic advertisements. Whereas here, we don't have that. We have the Hill's website. We have a Learn tab where veterinarians and others can go in order to learn more about issues related to pet health and nutrition and scientific issues. And for the reasons we explained in our brief, that website and those articles and most important, the statements contained in those articles do not constitute advertisements under any reasonable view of that term. Second, your honor, when you turn to Bolger's second factor of refers to a specific product. Now it is to begin with important that the Supreme Court use the word specific product. They did not just say product generally. So we have the Supreme Court focusing the inquiry first on, is there a specific product identified in the speech? And then the Supreme Court goes on to identify two exceptional situations. Now, again, we're already in the realm of non-core commercial speech. And so first amendment interests are heightened. And then here we're getting into a realm that's an exception to a factor that might be an indicium of non-core commercial speech. And what the Supreme Court said is a reference to a product in generic terms may suffice. If for example, the speaker controls such a large share of the market that in referring to that generic product, they are effectively referring to their own product. And in that case, it was Trojan brand, condom manufacturers. The Supreme Court found that that element was met here under the terms of Keto Naturals own allegations that appendix page 21, paragraph three of the complaint, the supposedly favored products in this speech about the scientific debate are the products of Hill's and at least two larger competitors. And Keto Natural makes much of the fact that Hill's pet food revenues are only 20% those of Purina's. There's no plausible allegation there that Hill's would meet that first exception to Bulger's second factor. And Your Honor, the second example that the Supreme Court gives as an exception is a trade association. And it's a trade association's very mission to promote a generic category of products. And therefore, if the trade association is the speaker and they're talking about the generic product, that's enough to satisfy that reference. Obviously here, Hill's is not a trade association, does not dominate the market. And we have the problem at the other end, Your Honors, where the allegedly offended products are of this broad class that also includes a number of Hill's products. When we look at the FDA case reports, we see at pages A-178, A-207, 234, 244, 248, 249, that Hill's own products, including a number of Hill's grain-free products are also within that category. Your Honors, I see my time has expired. If there are no further questions, thank you. And Hill's asks that this court affirm the judgment of the district court. Thank you. Thank you, Mr. Panikoski. Mr. Burt, you had some rebuttal time. Thank you, Your Honor. On the scope of the application of the establishment claim doctrine, I would ask the court to look at the excellent discussion in BASF in the Seventh Circuit, Eastman in the Fifth Circuit, and especially Southland Sod Farm in the Ninth, where there was a bar chart that simply said, proof that our product, I'm eliding some words, proof that our product saves time and money. The court said in that context, you're clearly saying that the science backs me up on this. I think while my learned opponent points to one, Rome Polonc in the Eighth, the bulk of the case law on establishment claim doctrine is flexible about what constitutes a statement that the science backs me up on this. I think, Your Honor, the best way that I can put the doctrine is, if the speaker's statement is of the nature, research shows this, the this has to be what the research shows. Your, my opponent raised, what's your, what's your response to his Bulger discussion? So, Your Honor, we know that the advertising product, the question of whether it is advertising is read holistically and flexibly because P&G in the Fifth Circuit did that. P&G actually remanded and said, if the district, if the district court finds that the statements, and it was a scurrilous allegation about, of disinformation about the directly competing product made by distributors for Amway, if the statements were made motivated by the attempt to gain a commercial advantage, then the first prong, if it's advertising, collapses with that. I also think my, my learned opponent has asked the court to, to render a decision that's directly contrary to the Ninth Circuit and Eric's just a couple of years ago. Eric says we live in the age of the influencer campaign, so those campaigns obviously look different, but they're clearly advertising campaigns. On the specific product, they said specific product, not brand, and I think that means what it says, and I think there are, there are cases in our brief that back that up. If you, if you say BEG dog foods or grain-free dog foods, that's a specific product, and I think the fact that Hills is not an overwhelming majority, is just one of the big three, is explained by the factual circumstance where Hills was the one losing market share to all of these smaller companies and in fact regained it. I've run my time, Your Honor. Thank you, Counsel. Counselor Skews in the case is submitted.